JAP:MKM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M 12- 217

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    -against-

ROBERT ALEXANDER,

        Defendant.

- - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANT
(T. 18, U.S.C. § 922(g)(1))

EASTERN DISTRICT OF NEW YORK, SS:

    DAVID JOEL, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), Gun Enhancement Unit, duly appointed according to law and acting as such.

    Upon information and belief, on or about February 26, 2012 within the Eastern District of New York, the defendant ROBERT ALEXANDER, having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess in and affecting commerce a firearm, to wit, a Bersa Thunder 380, .380 caliber, semiautomatic handgun, Serial No. A81744.

    (Title 18, United States Code, Section 922(g)(1))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. My information in this case comes from reviews of records of the NYPD and other Government agencies, and conversations with NYPD officers.

2. On or about February 26, 2012, at approximately 5:30 a.m., the NYPD received at 911 call in which a woman stated that there was man with a gun threatening to hurt people at 580 Richmond Road in Staten Island, New York. The woman described the man with a gun as a black man with braids in his hair, wearing a gray "hoodie" and black pants. She further stated that police assistance was needed ASAP.

3. Police Officers Sean Smith and Edward Murphy arrived at 580 Richmond Road in Staten Island shortly thereafter. A woman standing in the vicinity spoke with the police officers and stated, in sum and in substance, that there was a man with a gun in the building. She further stated that she did not see the gun, but heard a man say that he had a gun.

4. Officers Smith and Murphy then entered the building at 580 Richmond Road and proceeded upstairs. On their way up the stairs, they heard a commotion coming from inside an

---

[1] Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest, I have not set forth every fact learned during the course of this investigation.

apartment and found an apartment door open. Office Smith yelled "Police" several times, but the people in the apartment continued arguing. The officers then entered the apartment with their guns drawn and saw two men and two women. One of the men fit the description provided in the 911 call, namely, he was a black man with braids in his hair, wearing a gray "hoodie" and black pants. This man was later determined to be the defendant ROBERT ALEXANDER. Upon seeing Officers Smith and Murphy, the second man started to try to move away. The Officers directed him to put his hands on the cabinets on the wall.

5. After Officers Smith and Murphy succeeded in getting the second man to put his hand up, they noticed ALEXANDER moving towards a closed door inside the apartment. The officers then ordered ALEXANDER to put his hands up. Although ALEXANDER initially complied, he started to move towards the closed door, keeping the front of his body facing away from the officers. Officers Smith and Murphy then holstered their guns and moved to put handcuffs on ALEXANDER. Officer Murphy explained to ALEXANDER, in sum and substance, that he was not under arrest and that this was for the officers' safety. The officers succeeded in securing one handcuff on one of ALEXANDER's wrist, but were unable to secure the second handcuff because ALEXANDER resisted.

6. ALEXANDER struggled vigorously against Officers Smith and Murphy and pushed towards the door of the apartment. The struggle then moved from inside the apartment to the hallway outside of the apartment, where Officers Smith and Murphy were still unable to secure the second handcuff. The struggle continued in the hallway, first against the hallway banister and eventually near the top of the stairs. Officers Smith and Murphy, fearing that they might fall down the stairs with ALEXANDER, allowed ALEXANDER to break free. ALEXANDER tumbled down the stairs and, when he reached the landing, he hit the hallway wall, jumped up, and started running. He ran down to the first floor and out the of the building.

7. Officers Smith and Murphy gave chase and, upon exiting the building saw ALEXANDER run across Richmond Road onto Cunard Place. Officers Jessi D'Ambrosio and Lloyd Gregory, who were in a police vehicle on Richmond Road responding to the call, saw ALEXANDER run in front the police vehicle and run up Cunard Place. Officer Gregory, who was driving, turned the police vehicle up Cunard Place and pulled along side ALEXANDER. Officer D'Ambrosio, who was in the passenger side of the police vehicle, saw ALEXANDER trying to remove his sweatshirt as he continued to run. Officer Gregory then stopped the police vehicle in front of ALEXANDER, angled towards a driveway.

8. Officers D'Ambrosio and Gregory exited the police vehicle and chased ALEXANDER who ran towards the back of the driveway. Officer D'Ambrosio saw ALEXANDER remove his sweatshirt and throw it on the ground as he started to try to climb the fence at the back of the driveway. Officer D'Ambrosio and Gregory pulled ALEXANDER off the fence and were trying to place handcuffs on him when they discovered that ALEXANDER was already wearing one handcuff. Officers Smith and Murphy arrived shortly thereafter and assisted Officers D'Ambrosio and Gregory in placing the second hand-cuff on ALEXANDER who continued to struggle. In the process of doing so, Officer Smith used OC spray ("pepper spray") to try to subdue ALEXANDER who was struggling vigorously.

9. In the driveway, and not far from where ALEXANDER was handcuffed, Officer Murphy recovered the sweatshirt that Officer D'Ambrosio had seen ALEXANDER throw on the ground. Officers Smith and Murphy were able to confirm that this appeared to be the same sweatshirt that ALEXANDER had been wearing inside the apartment. The sweatshirt appeared to be in the same condition except that it was inside out. Officer Murphy felt a gun in the sweatshirt and removed it from the sweatshirt pocket. He removed the magazine, pulled the slide back and saw a bullet in the chamber. The gun recovered from ALEXANDER is a Bersa

Thunder 380, .380 caliber, semiautomatic handgun, Serial No. A81744.

10. ALEXANDER was transported to the 120th precinct, where he was interviewed by NYPD Detective Bryan Mason. After being advised of and waiving his <u>Miranda</u> rights, ALEXANDER stated in sum and substance: I was with some acquaintances for a birthday party and we went to a few bars. We went back to the house and I fell asleep on the couch. When I woke up, someone took $500 out of my pocket. I started to yell who took my money and a guy that was there who was much bigger than me approached me and I punched him. The girl that was there came after me and, trying to get her off of me, I saw the big guy reaching under the couch. I jumped on him and saw a gun that he was reaching for and I got it away from him and put it in my sweatshirt and tried to leave, but the cops came. Before the cops came, me and the big guy were arguing. He wanted his gun back and I wanted my money back. Then the cops came.

11. Detective Mason wrote out ALEXANDER's statement and read it back to him. ALEXANDER agreed that the facts were correctly stated, but indicated that he would not sign the statement unless his lawyer read it.

12. I have reviewed the defendant ROBERT ALEXANDER's criminal history records and have determined that the defendant

was convicted on April 20, 2009, in a New York State court, the Supreme Court of Richmond County, New York, of criminal possession of a controlled substance in the fifth degree, in violation of New York Penal Law 220.06(5), a class D felony, which is a crime punishable by a term of imprisonment of more than one year. In addition, the defendant was convicted on the same date of assault with intent to cause physical injury, in violation of New York Penal Law 120.05(3), a class D felony, which is a crime punishable by a term of imprisonment of more than one year.

13. I have spoken with an ATF interstate nexus expert, who has advised me that the above-mentioned Bersa Thunder 380 semiautomatic handgun was manufactured outside the State of New York.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant ROBERT ALEXANDER so that he may be dealt with according to law.

DAVID JOEL
Detective
New York Police Department

Sworn to before me this
1st day of March, 2012

THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK